UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RACHEL L. LYGHTS,<br><br>          Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>          Defendant. | No. 12-cv-0364-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 15, 18.) Attorney Rebecca M. Coufal represents plaintiff; Special Assistant United States Attorney Jeffrey R. McClain represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Rachel Lynn Lyghts (plaintiff) filed for supplemental security income (SSI) on April 24, 2008.[2] (Tr. 30, 103.) Plaintiff alleged an onset date of June 1, 2004.[3] (Tr. 30, 103.) Benefits were denied initially and on reconsideration. (Tr. 66, 73.) Plaintiff requested a hearing

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

[2] Plaintiff also applied for child's insurance benefits on her mother's social security record on September 3, 2008. (Tr. 9.) The ALJ's decision does not address the child's insurance benefits claim, but the Appeals Council reviewed the issue and denied the claim based on the ALJ's findings. (Tr. 8-10, 97-100.) Plaintiff admits she is not currently eligible for adult child benefits (ECF No. 16 at 1, n. 2) and the Appeals Council's decision on this issue is not challenged by plaintiff.

[3] As noted by the ALJ, Title XVI benefits are not payable before the date of application, 20 C.F.R.§§ 416.305, 416.330(a); S.S.R. 83-20, therefore April 24, 2008 is the beginning of the relevant period in this case. (Tr. 30.)

before an administrative law judge (ALJ), which was held before ALJ R.J. Payne on September 23, 2009. (Tr. 30-63.) Plaintiff was not represented by counsel at the hearing. Plaintiff and medical expert Anthony Francis testified. (Tr. 34-63.) The ALJ denied benefits (Tr. 18-24) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 21 years old at the time of the hearing. (Tr. 61.) She graduated from high school. (Tr. 49.) She has work experience as a cashier, telemarketer, waitress and prep cook. (Tr. 51.) She testified her biggest problem with working has to do with her left knee. (Tr. 50.) She cannot walk very far and has difficulty standing more than two or three minutes. (Tr. 54.) She has to lean on something while standing because she has pain up and down her leg. (Tr. 54.) She is also prevented from working by ADD/ADHD. (Tr. 51.) She testified she has been fired because she has a hard time catching on to things and comprehending things. (Tr. 51.) It takes her longer than other people to learn how to do things the right way. (Tr. 51.) She is slower than other people at doing things. (Tr. 51.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).

"[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 24, 2008, the application date. (Tr. 20.) At step two, the ALJ found plaintiff has the following severe impairment: status-post/history of multiple left knee surgeries. (Tr. 20.) At step three, the ALJ found plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 21.) The ALJ then determined plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a). (Tr. 21.) At step four, the ALJ found plaintiff has no past relevant work. (Tr. 23.) After considering plaintiff's age, education, work experience, residual functional capacity, and the Medical-Vocational Guideline, the ALJ found there are jobs that exist in significant numbers in the national economy the plaintiff can perform. (Tr. 23.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since April 24, 2008, the date the application was filed. (Tr. 24.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts: (1) the ALJ erred by failing to develop the record; (2) the ALJ should have determined ADD/ADHD is a severe impairment; (3) the ALJ improperly relied in the Medical-Vocational Guidelines at step five. (ECF No. 16 at 8-15.) Defendant argues: (1) the ALJ's step two findings were reasonable; (2) the ALJ satisfied the duty to develop the record; (3) the ALJ properly found plaintiff not disabled. (ECF No. 18 at 4-11.)

## DISCUSSION

At the outset, it is noted that plaintiff's second and third assignments of error depend upon the outcome of her first argument, that the ALJ failed to properly develop the record. Plaintiff does not argue that evidence in the record establishes a severe mental impairment at step two, but that the record is incomplete. (ECF No. 16 at 11-13.) Plaintiff's step five argument assumes non-exertional impairments should have been "fleshed out" by expansion of the record, potentially affecting the step five finding. (ECF No. 16 at 14-15.) Plaintiff does not assert error regarding the ALJ's findings as to plaintiff's left knee or other physical impairments and after reviewing the record and the ALJ's decision, the court concludes the ALJ's findings regarding plaintiff's physical impairments are supported by substantial evidence. Thus, the primary issue before the court is whether the ALJ should have developed the record regarding plaintiff's mental health impairments.

Plaintiff argues the ALJ should have developed the record regarding plaintiff's ADD/ADHD and IQ. (ECF No. 16 at 8-11.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered,

even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The ALJ must be especially diligent when the claimant is unrepresented. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998); *see also Tonapetyan*, 242 F.3d at 1150.

The ALJ noted plaintiff's medical records are "clear and concise" (Tr. 20) and considered the limited evidence regarding plaintiff's ADD/ADHD in the record. (Tr. 21-22.) The ALJ noted Dr. Purdy's November 2008 "handwritten, rather cryptic, short treatment notes" indicate plaintiff reported having problems paying attention and understanding things and that she had been fired from jobs for not catching on. (Tr. 21, 249.) Plaintiff reported she had not taken medication for ADHD in three or four years and Dr. Purdy prescribed Strattera. (Tr. 249.) In December 2008, plaintiff reported Strattera causes nausea and dizziness, so a new prescription for a reduced dose was given. (Tr. 248.) In June 2009, plaintiff saw Dr. Purdy to "fill out paperwork for disability" and she wanted to get back on Strattera.[4] (Tr. 245.) Dr. Purdy noted she graduated from high school and is raising two children without trouble while her husband works. (Tr. 245.) Plaintiff had previously reported back pain which was resolved and there were "no other problems." (Tr. 245.) Plaintiff reported she focused better on Strattera and wanted to restart it, so Dr. Purdy issued a new prescription. Dr. Purdy assessed myalgia, mild ADD, and made an abbreviated notation including a question mark, down arrow, and "IQ," suggesting questionable decreased or lower IQ. (Tr. 245.) This is the extent of the medical record discussing plaintiff's ADD and IQ.

The ALJ found plaintiff's ADD was better on Strattera and concluded indications of questionable decreased IQ "are without merit considering her overall history and overall medical record." (Tr. 22.) The ALJ did not otherwise comment on plaintiff's ADHD or ADD at step two

---

[4] Any "disability paperwork" which may have been completed by Dr. Purdy is not part of the record.

or in evaluating plaintiff's limitations. Plaintiff argues the ALJ should have developed the record by requesting additional school or medical records or directing a consultative psychological examination. (ECF No. 16 at 9.)

Specifically, plaintiff asserts the ALJ should have developed the record regarding plaintiff's educational background. (ECF No. 16 at 9.) The record contains plaintiff's middle school and high school transcripts for 2001 to 2006 which suggest that plaintiff spent time in "life skills" and "resource" classes. (Tr. 168-69.) Plaintiff graduated from high school with a cumulative GPA of 1.429. (Tr. 169.) According to plaintiff, her transcripts show that she was "passed at a 3rd grade level." (Tr. 13.) Plaintiff argues the ALJ should have attempted to obtain additional school records such as an Individual Educational Plan (IEP or Section 504 plan) or IQ or behavioral test results to support the need for life skills and resource room classes. (ECF No. 16 at 9.)

Plaintiff also argues the ALJ should have sent plaintiff for a consultative psychological evaluation to further expand the record. (ECF No. 16 at 9-10.) An ALJ "has broad latitude in ordering a consultative examination." *See Reed v. Massanari* 270 F.3d 838, 842 (9th Cir. 2001) (*quoting Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)). The government is not required to bear the expense of an examination for every claimant. *See generally* 20 C.F.R. §§ 404.1517-1519t, 416.917-919t. A consultative examination may be required to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient for a determination. 20 C.F.R. §§ 404.1519a(b), 416.919a. Plaintiff asserts the ALJ relied on his own observations and acted as his own medical expert rather than order a psychological evaluation. (ECF No. 16 at 10.)

Plaintiff was not represented by an attorney at the hearing. (Tr. 18, 31.) The ALJ has an affirmative duty to develop the record, particularly when a claimant is unrepresented. *Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003). The question is whether the ALJ has acted reasonably in fulfilling his or her responsibility of scrupulous, conscientious, and diligent inquiry into the facts. *Id.* In cases of mental impairments, this duty is especially important. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). When a claimant is *both* unrepresented and suffers from a mental impairment, the ALJ's duty to carefully develop the record is even greater. *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991) (*quoting Ransom v. Bowen*, 844 F.2d 1326, 1330 n. 4 (7th Cir. 1988)).

In this case, there is evidence suggestive of a mental impairment due to ADHD and possible low IQ. The ALJ asked plaintiff to provide Dr. Purdy's records and indicated if the records showed something significant, he might request a psychological evaluation. (Tr. 62.) Although Dr. Purdy assessed only mild ADD (Tr. 245), the notation suggesting questionable IQ creates an ambiguity. In combination with school records indicating plaintiff received educational services from the life skills and resource classrooms, the record is unclear about plaintiff's cognitive abilities. In light of the ALJ's heightened duty of inquiry when a plaintiff is unrepresented and alleging mental impairments, the ALJ should have pursued clarification of plaintiff's alleged mental limitations. The ALJ's duty to develop the record may have been met simply by inquiring of Dr. Purdy to clarify his opinion, or by further investigation into school records to determine whether psychological or cognitive testing was previously done, or by a psychological evaluation.

Further, the ALJ's dismissal of Dr. Purdy's note regarding questionable IQ is not adequately supported.[5] It is insufficient for the ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must do more than offer his conclusions. He must set forth his own interpretation and explain why it, rather than the doctor's, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Here, the ALJ discarded Dr. Purdy's note about questionable IQ as "without merit considering her overall history and overall medical record" but failed to explain or discuss the conclusion in any detail. (TR. 22.) The ALJ's generalization is not sufficiently specific to justify rejecting Dr. Purdy's note raising an issue regarding plaintiff's IQ.

Because the record is not clear regarding plaintiff's mental abilities, the ALJ should obtain additional evidence regarding any mental limitations arising from ADD/ADHD or possible low IQ. The ALJ may develop the record by requesting additional information from Dr.

---

[5] If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). In this case, there is no contradictory medical or psychological opinion regarding plaintiff's mental health. Thus, the ALJ must provide clear and convincing reasons for rejecting a portion of Dr. Purdy's findings.

Purdy, obtaining additional educational or mental health records, directing a psychological evaluation, or via the testimony of psychological expert, as the ALJ determines to be necessary.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should develop the record regarding plaintiff's mental ability and limitations.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 18 )** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED October 17, 2013

                     S/ JAMES P. HUTTON
                     UNITED STATES MAGISTRATE JUDGE